**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**John Russell WEBSTER, Jr., Delbert Paul Hoskins, Robert Bode and John Jay Caperton, Defendants-Appellants.**

**No. 83–1191.**

United States Court of Appeals, Fifth Circuit.

June 11, 1984.

Rehearing and Rehearing En Banc Denied July 18, 1984.

Dick DeGuerin, Houston, Tex., for Webster.

Jack T. Lassiter, Little Rock, Ark., for Hoskins.

Thomas E. Hanson, Memphis, Tenn., for Bode.

Dan C. Guthrie, Jr., Dallas, Tex., Caperton.

James A. Rolfe, U.S. Atty., Dallas, Tex., Robert R. Smith, Asst. U.S. Atty., Mervyn Hamburg, Atty., Washington, D.C., for plaintiff-appellee.

Before JOHNSON, HIGGINBOTHAM, and DAVIS, Circuit Judges.

JOHNSON, Circuit Judge.

In November 1981, a barber in Dallas, Texas named Kenneth Grindele walked into the Dallas United States Attorney's Office and identified himself as a cocaine user and "small time" dealer. Grindele advised federal authorities that he had been involved in cocaine trafficking with appellant John Russell Webster, that he was indebted to Webster and in fear of his life due to his inability to pay Webster. He explained further that he was aware of other individuals involved in the Dallas cocaine market, and was willing to exchange this information for government protection and immunity from prosecution.[1] The ensuing investigation resulted in what was referred to as the biggest cocaine bust in Dallas history. Appellants John Russell Webster, Delbert Paul Hoskins, John Jay Caperton, and Robert Bode appeal from their convictions resulting from this investigation. Finding no reversible error, we affirm the appellants' convictions.

I. Background and Course of Proceedings

The evidence presented at trial demonstrated that appellants Webster, Caperton, Hoskins, and Bode were involved extensively in cocaine trafficking. Over the course of about two years, these individuals engaged in numerous cocaine transactions involving large amounts of high-quality cocaine, which would be cut and sold or fronted to cocaine dealers who would distribute the cocaine to individual users. While appellants distributed most of the cocaine in Dallas, Texas, the evidence established that appellants often would travel to Georgia or Florida to obtain high-quality cocaine.

One of appellant Webster's regular dealer-customers was a Dallas barber named Kenneth Grindele. At one time, Grindele purchased as much as two ounces from Webster at $1700 per ounce. Grindele consumed some of the cocaine himself and sold the remainder to individual consumers. In October 1981, Grindele's wife discovered his two ounce supply of cocaine and destroyed it. At the time, Grindele owed Webster $5000, including $3400 for the cocaine destroyed by his wife. Fearful that he would be harmed by Webster because he could not make any payment, Grindele decided to tell the government what he knew about appellants' activities. As a result of this and other information, DEA

---

**1.** Grindele ultimately was granted complete transactional immunity and paid in excess of $21,000 for his information and subsequent testimony.

and FBI agents cooperated in a joint investigation of Webster and his associates.

In December, Grindele, equipped by law enforcement officers with a body microphone, made two purchases from Webster and four from Danny Stone, another of Webster's customers. In June 1982, a federal magistrate approved a request to conduct electronic surveillance of telephones at the residences of Webster and Stone. Wiretaps were initiated on Webster's telephone on June 4 and continued, pursuant to a court approved extension, to August 1, 1982. As a consequence, the law enforcement officers learned of Webster's plans to travel to Florida on July 2 to acquire cocaine.[2]

On the date of Webster's departure from Dallas, agents observed him arrive at the airport in Gainesville, Florida at 6:45 p.m. There he was met by Martin Lewis, a friend involved in the cocaine business, who was driving appellant Hoskin's pickup truck. They drove to a hotel parking lot and remained in the car bent over out of sight for a short period of time. Then, they conversed for about ten minutes, and later Webster checked into the hotel. Meanwhile, Lewis drove to a jai alai arena where he met appellant Hoskins. Lewis and Hoskins remained together from 8:00 p.m. until 11:45 p.m., when Hoskins left the arena. A half hour later, Lewis departed and drove the pickup truck to Hoskins' ranch. On the following day, Webster checked out of the hotel and flew to Miami. He rented a car and drove it first to a store where he purchased Inositol, a substance commonly used to dilute cocaine. Webster returned to Dallas on July 8.

Webster, Caperton and Hoskins were arrested at their individual residences on August 6, 1982. At the time of arrest, agents, armed with warrants, conducted searches of the Webster and Caperton residences.

Inside Webster's home the agents discovered, inter alia, cash and undeposited checks, a triple beam scale, large quantities of cocaine and cocaine paraphernalia. At Caperton's residence, the agents found weapons, packages of cocaine, drug paraphernalia and dilutents. In a garage, the agents located a floor safe, which contained $18,200 in cash, expensive jewelry, and large bags of cocaine.

The original indictment resulting from this investigation named thirty-four defendants in 88 counts. After extensive plea bargaining, the government proceeded to trial on a fifty-count indictment against the four defendant-appellants involved herein. The indictment charged these four individuals with numerous violations of federal narcotics laws.[3] Additionally, appellant Webster only was charged with one count of engaging in a continuing criminal enterprise. *See*, 21 U.S.C. § 848. The trial of the case took over six weeks, involved 52 witnesses, and resulted in a trial transcript exceeding 5000 pages. Appellant Webster was convicted on twenty counts, sentenced to imprisonment for 60 years, fined $150,000, and subjected to a five-year special parole term. However, Webster was not convicted on the continuing criminal enterprise count. In fact, the trial judge declared a mistrial on the continuing criminal enterprise count when the jury was unable to reach a verdict. Appellant Hoskins was convicted on four counts, sentenced to imprisonment for 30 years, fined $70,000, and subjected to a five-year special parole term. Appellant Caperton was convicted on five counts, sentenced to a total of twenty-five years incarceration, fined $30,000 and subjected to a five-year special parole term. Finally, appellant Bode was convicted on three counts, sentenced to imprisonment for six months followed by probation for four and a half years and fined $80,000.

---

**2.** Aware of Webster's inclination to conduct his conversations regarding cocaine purchases from pay telephones at a nearby market, the drug agents stationed themselves at adjacent telephones along the phone bank and overheard Webster's portion of his conversation in which he spoke of his plans to travel to Florida.

**3.** Specifically, appellants were charged with violations of 21 U.S.C. §§ 841, 843, 846 and 18 U.S.C. § 1952.

All appellants filed a notice of appeal and have raised numerous issues on appeal.

## II. Severance

All four appellants contend that the district court erred by refusing to grant their motions for severance. Webster, the alleged kingpin in the cocaine conspiracy and the only appellant charged with a continuing criminal enterprise violation, argues that the district court erred by refusing to sever the continuing criminal enterprise count from the remaining conspiracy and substantive counts. According to Webster, he was compelled to adopt a strategy of defense whereby he admitted having committed some of the acts charged in the conspiracy and substantive counts, in order to effectively maintain that he was not the kingpin in this alleged continuing criminal enterprise. Webster's codefendants argue that their trials should have been severed from Webster's since he admitted the factual accuracy of many of the conspiracy and substantive counts in which they were named in his attempt to refute the continuing criminal enterprise count.

This Court has consistently emphasized that "[p]ersons indicted together should ordinarily be tried together." *United States v. Romanello*, 726 F.2d 173 (5th Cir.1984). Indeed, rule 8 of the Federal Rules of Criminal Procedure provides for the joinder of multiple offenses and multiple defendants and we have stressed that "rule 8 is to be broadly construed in favor of initial joinder ..." *United States v. Park*, 531 F.2d 754, 761 (5th Cir.1976), *citing*, *Tillman v. United States*, 406 F.2d 930, 934 (5th Cir.), *vacated on other grounds*, 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742 (1969). Nevertheless, rule 14 of the Federal Rules of Criminal Procedure provides an exception to the maxim favoring joinder of multiple offenses and multiple defendants. Rule 14 provides:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection *in camera* any statements or confessions made by the defendant which the government intends to introduce in evidence at the trial.

Fed.R.Crim.P. 14.

We have held often that the decision whether to grant a severance of defendants or offenses lies within the broad discretion of the district court and that this Court will not overturn the district court's decision absent an abuse of discretion. *See, U.S. v. Sheikh*, 654 F.2d 1057 (5th Cir.1981); *United States v. Berkowitz*, 662 F.2d 1127 (5th Cir. Unit B, 1981); *United States v. Crawford*, 581 F.2d 489 (5th Cir.1978); and *United States v. Johnson*, 478 F.2d 1129 (5th Cir.1973). In order to establish an abuse of discretion, the defendant must show that he "received an unfair trial and suffered compelling prejudice against which the trial court was unable to afford protection." *See U.S. v. Berkowitz*, 662 F.2d at 1132. With these precepts in mind, we review the appellants' contentions.

### A. Webster's Motion to Sever Offenses

Webster concedes that the continuing criminal enterprise count was joined properly with the conspiracy and substantive counts under rule 8, since the counts are factually interrelated and allegedly constitute parts of a common scheme or plan. *See*, Fed.R.Crim.P. 8. He maintains, however, that the trial court erred by refusing to grant a severance of the continuing criminal enterprise count under rule 14. According to Webster, in order to refute the continuing criminal enterprise allegation, he was forced to admit that he was involved with his codefendants in cocaine activities.

At trial, prior to opening statements, the district judge engaged in a somewhat unusual procedure and had each defendant

stand and plead to the various counts in the indictment in front of the jury.[4] Although Webster pled not guilty to all counts, he often made equivocal statements similar to the following: "I don't deny the act Your Honor, but my plea is not guilty." *See,* Record, Vol. XV at 577–78. Thereafter, during opening statements and throughout trial, Webster maintained that although he was involved in numerous cocaine dealings with his codefendants, he was not the king-pin in the alleged continuing criminal enterprise.

Webster's contention that the district court abused its discretion by refusing to sever the continuing criminal enterprise count from the remaining counts must fail, since Webster has failed to demonstrate compelling prejudice. Initially, we note that we simply do not see how joinder of the continuing criminal enterprise count forced Webster to admit his guilt on the conspiracy and substantive counts. Webster certainly could have argued that he did not engage in any of the acts charged in the conspiracy or substantive counts and, at the same time, argue that he was not the head of the continuing criminal enterprise. It is noted that the jury was unable to convict Webster on the continuing criminal enterprise count even though it convicted him on numerous of the conspiracy and substantive counts. This result, however, appears to follow from Webster's volun-tary strategic decision not to seriously chal-lenge the conspiracy and substantive counts, but to focus his attack upon the continuing criminal enterprise count. Web-ster certainly cannot now argue that the jury's verdict reflects prejudice flowing from the joinder of the offenses, since he voluntarily decided to pursue a strategy of attacking only the criminal enterprise count at trial. Finally, we note that Web-ster was not held to any of his statements in pleading to the counts by the court or the prosecutor, and at no time was Web-ster's cross examination of witnesses limit-ed because it might have been inconsistent with his earlier unilateral declaration not to

challenge certain factual recitations in the indictment. Consequently, the government was required to prove all the elements of each of the twenty-one offenses charged against Webster, and the court was re-quired to instruct the jury on the specific elements of all of the charged offenses. Simply put, we conclude that Webster has failed to demonstrate compelling prejudice resulting in an unfair trial.

### B. Webster's Codefendant's Motion for Severance

As noted, Webster's codefendants con-tend that the trial court should have sev-ered their trials from Webster's so that they could have been tried separately. The incident that underlies the claim for preju-dice asserted by Webster's codefendants arose at the outset of the proceedings. As noted previously, the district judge, in the presence of the jury, conducted what was tantamount to a rearraignment and re-quired each defendant to plead to the counts in the indictment. Although Bode, Hoskins, and Caperton entered straightfor-ward pleas of not guilty, Webster often embellished his responses. According to appellants Bode, Hoskins, and Caperton, Webster's defense was antagonistic to their defenses and the district court should have granted a severance.

When codefendants allege antag-onistic defenses as a ground for severance, this Court has applied very specific tests to determine whether the trial was unfair. To compel severance, the defenses must be antagonistic to the point of being irreconcil-able and mutually exclusive. *See, United States v. Berkowitz,* 662 F.2d at 1133; *United States v. Crawford,* 581 F.2d at 491. The defenses must be so antagonistic that the jury, in order to believe the de-fense of one defendant, must necessarily disbelieve the other defendant's defenses. *Id.* Such is not the case here. The election of Webster not to seriously oppose the proof of his own implication in the conspir-

---

**4.** The record does not reveal the reason for this unusual procedure and the problems inherent in such a procedure militate against its contin-ued use.

acy and substantive counts did not automatically sweep his codefendants into that strategy and create a situation involving mutually exclusive and irreconcilable defenses.[5] *See, c.f., United States v. Romanello*, 726 F.2d 173 (1984). The fact that Webster may have admitted his involvement in some of the charged conspiracy and substantive counts would not require necessarily the jury to conclude that the other codefendants, who disputed their involvement in the charged counts, were likewise involved. Moreover, it is noted that Webster never directly implicated his codefendants by name in any criminal activity in the process of pleading to the indictment.[6] In sum, appellants have failed to demonstrate that the district court's refusal to grant a severance constituted an abuse of discretion resulting in compelling prejudice.

## III. Wiretap Order

Appellant Webster contends that the trial court erred by denying his motion to suppress the evidence obtained through wiretap surveillance, since the government allegedly failed to demonstrate that other available means of investigation were unsuccessful. *See,* 18 U.S.C. § 2518(1)(c).[7]

However, a review of the record reveals that this contention is without merit.

On June 2, 1982, an application for a wiretap order was made to the district court. Accompanying the application was a 60-page affidavit prepared by FBI agent Donald Sanchez containing 239 separate paragraphs. Sanchez's affidavit stated that the investigation conducted theretofore had revealed the existence of a large cocaine distribution conspiracy with membership consisting of six named individuals, including Webster, and Caperton. Sanchez described incidents of drug trafficking indicating that the data was compiled from discussions with several named informants and a confidential source, physical surveillance, investigation of telephone records and a pen register. These sources demonstrated the frequent use of the telephone for drug trafficking purposes. In a subsequent portion of the affidavit, Sanchez set forth reasons why electronic surveillance was needed. He stated that physical surveillance had not disclosed Webster's source for cocaine and that there was no reason to believe that future physical surveillance would be successful. He added that continued surveillance carried a serious risk of detection that would irreparably damage the ongoing investigation. The

---

5. Indeed, a review of the jury's verdict demonstrates that the jury considered "the independent evidence against each defendant solely upon that defendant's own acts, statements and conduct." *See, United States v. Perez,* 489 F.2d 51, 65 (5th Cir.1973), *cert. denied,* 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974). In light of this, it is clear that the jury was able to "keep separate the evidence that [was] relevant to each defendant" and rendered a fair and impartial verdict as to each defendant. *Id.*

6. Appellants also allege that Webster's statements in front of the jury in pleading to the indictment violated the Supreme Court's holding in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). However, this Court has held consistently that the *Bruton* rule is not violated unless a codefendant's statement directly alludes to the complaining defendant. *See, United States v. Heffington,* 682 F.2d 1075, 1082–1083 (5th Cir.1982); *U.S. v. Castro,* 596 F.2d 674, 676–77 (5th Cir.1979); *United States v. Roach,* 590 F.2d 181 (5th Cir. 1979); and *United States v. Gravitt,* 590 F.2d 123 (5th Cir.1970). This is true, even if the evidence

makes it apparent that the defendant was implicated by some indirect references. *United States v. Stewart,* 579 F.2d 356 (5th Cir.) (*cert. denied,* 439 U.S. 936, 99 S.Ct. 332, 58 L.Ed.2d 332 (1978)). In the instant case, examination of the record reveals that Webster did not directly allude to any of the complaining defendants in pleading to the indictment.

7. Section 2518(1)(c) provides:

(1) Each application for an order authorizing or approving the interception of a wire or oral communication under this chapter shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application. Each application shall include the following information:

\* \* \* \* \* \*

(c) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous;

\* \* \* \* \* \*

agent also stated that infiltration was not a viable option because Webster was suspicious of newcomers and because the informants "cannot and will not" introduce an undercover agent to Webster.

 Nonetheless, Webster contends, as he did prior to trial, that the lengthy affidavit failed to satisfy 18 U.S.C. § 2518(1)(c), which requires that wiretap affidavits contain a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried.[8] However, the purpose of § 2518(1)(c) is not to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted. Rather, the section is designed to inform the issuing judge of the difficulties involved in the use of conventional techniques and to insure that wiretapping is not resorted to in a situation in which traditional investigative techniques will suffice to expose crime. *See, United States v. Kahn,* 415 U.S. 143, 153, 94 S.Ct. 977, 983, 39 L.Ed.2d 225 (1974); *United States v. Clements,* 588 F.2d 1030, 1036 (5th Cir.), *cert. denied,* 440 U.S. 982, 99 S.Ct. 1792, 60 L.Ed.2d 243 (1979). Moreover, this Court, in the past, has affirmed wiretapping orders based upon affidavits containing statements similar to those contained in Agent Sanchez' affidavit: inability to develop the case fully with an informant's knowledge, limited value of searches, inability to infiltrate, lack of access to the source, fear expressed by informants and the like. *See, e.g., U.S. v. Hyde,* 574 F.2d 856 at 869. Judged by these well settled standards, Agent Sanchez' affidavit clearly satisfies the requirements of 18 U.S.C. § 2518(1)(c). Finally, we note that the fact that Webster's counsel on appeal could list conceivable alternative techniques for investigation, (i.e., aerial surveillance) is not dispositive. As this Court has stated: "Courts will not invalidate a wiretap order because defense lawyers are able to suggest *post factum* some investigative technique that might have

been used and was not. It is enough that the affidavit explains the ... failure of several investigative techniques that reasonably suggest themselves." *Id.* at 867.

IV. The Search Warrant

 Appellants Webster and Caperton maintain that the trial court erred in overruling their motion to suppress the evidence obtained pursuant to the search warrant. We disagree. Based on affidavits establishing probable cause that Webster's residence contained evidence of violations of numerous drug offenses, the magistrate issued a warrant authorizing a search of Webster's residence. The following items were included in the authorization: money, financial instruments, his and her matching gold Rolex watches, gold and diamond rings, controlled substances, drug paraphernalia, indicia of occupancy and residency, and three particularly described vehicles.

Appellant Webster alleges that the warrant is invalid since the language in it is too general and that, consequently, law enforcement officers had been empowered to rummage through his house. Webster's claim is without merit. This Court has recognized that detailed particularization often is impossible. We have held that in such instances, generic language suffices if it particularizes the types of items to be seized. *See, United States v. Cook,* 657 F.2d 730 (5th Cir.1981). Thus, it has been held that a warrant that authorizes the seizure of "paraphernalia" or "other fruits, instrumentalities in evidence of a crime at this time unknown" was sufficient. *Andresen v. Maryland,* 427 U.S. 463, 479, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976). In the instant case, the language in the warrant was sufficiently specific to avoid a general ransacking of Webster's house and a review of the record reveals that the warrant was adhered to in the search of Webster's house. Hence, this contention is rejected.

---

**8.** *See,* note 7, *supra.*

Prior to trial, appellant Caperton filed a motion to suppress the search warrant alleging different reasons. Caperton alleged the information in the affidavit was stale, that the affiant had set forth conclusory allegations without supporting facts, that no factual basis was shown for identifying Caperton as a party to certain incriminating telephone calls, and that the affiant had not explained why the agents had concluded that certain words spoken on the telephone were code words for drug transactions. Following an extensive hearing, the district court denied Caperton's motion to suppress and we affirm the district court's ruling in that regard.

Caperton's claim of stale information is without merit. Staleness is to be determined on the facts of each case. *See United States v. Freeman*, 685 F.2d 942 (5th Cir.1982). No mechanical counting of the time between the events alleged in the affidavit and the time the warrant is issued will be made. Moreover, a finding of staleness or timeliness of information can depend upon the nature of the unlawful activity and, when the information of the affidavit clearly shows a long-standing, ongoing pattern of criminal activity, even if fairly long periods of time have lapsed between the information and the issuance of the warrant, the information need not be regarded as stale. *See United States v. Freeman*, 685 F.2d 942, 951–52 (5th Cir. 1982). Judged by these principles, the warrant issued to search Caperton's house was not based upon stale information. To the contrary, the 77-page affidavit was more than adequate as the detailed information received from eye witnesses, electronic surveillance and visual surveillance implicated Caperton in an ongoing drug trafficking scheme beginning in May 1981 and continuing until July 22, 1982, only about two weeks before the warrant was issued.

Caperton also assails the propriety of the affiant's interpretation of certain key words, *e.g.*, "golf balls" overheard in telephone conversations as code words for drugs. However, the affidavit demonstrates that the affiant had participated in more than 300 drug investigations—fifty in an undercover capacity—during a span of seven years and had testified as an expert on the jargon used by drug traffickers on more than fifteen occasions. Clearly, the magistrate had more than ample reason to credit the affiant's interpretation of what the affiant believed to be coded language. Finally, we note that Caperton's remaining attacks upon the search warrant are without merit.

## V. Bode's Motion for a Continuance

Appellant Bode contends that the trial court abused its discretion in denying his motion for continuance and, indeed, the record reflects that Bode's attorney had little time to prepare for trial. Appellant Bode was not indicted with the other codefendants in the original indictment. Instead, Bode was indicted on December 2, 1982, arraigned on December 3, 1982, and advised at that time that he should be prepared to proceed to trial on January 5, 1983.

Following a pretrial conference on January 4, 1983, counsel for appellant Bode made a motion for a continuance to which the trial court responded:

As to [the] limited [time] that you—of course, you've been given—requires thirty days. I am disturbed and if you were alone I'd have no problem in granting a continuance. It's an unfortunate situation that you were not brought in before the late date.

It is well settled that the decision whether to grant a continuance lies within the sound discretion of the trial court and that that decision will be overturned only if the appellant demonstrates an abuse of discretion resulting in serious prejudice. *See, United States v. Jiminez-Diaz*, 659 F.2d 562, 567 (5th Cir.1981), *cert. denied sub nom, Salazar v. United States*, 456 U.S. 907, 102 S.Ct. 1754, 72 L.Ed.2d 164 (1982). Moreover, when claims of insufficient time for preparation are advanced, this Court will examine the totality of the circumstances, including such factors as the time available for preparation, the degree of complexity of the case, the availability of discovery from the prosecution, the adequacy of the defense actually provided at

trial, and the services performed by counsel for codefendants that accrued to the benefit of the defendant. *See, United States v. Uptain*, 531 F.2d 1281 (5th Cir. 1976).

The record reveals that the district court was sensitive to the limited amount of time given Bode's attorney for preparation. An examination of the record fails to reveal that the short amount of time given Bode resulted in serious prejudice to him. Bode's counsel had the full cooperation of the other defense lawyers as well as the prosecution. Indeed, counsel for Bode praised the prosecution for its openness in relaying discovery matters to Bode. Finally, we note that a review of the record reveals that Bode's counsel was fully prepared and effectively represented his client. Hence, we are unable to conclude that the trial court abused its discretion in denying Bode's motion for a continuance and that the court's decision resulted in serious prejudice to Bode's defense.

Finally, it is noted that we have fully considered the remaining contentions made by the appellants and have determined that they are without merit. Accordingly, finding no reversible error in the district court's judgment, it is affirmed in all respects.

AFFIRMED.