A grocery store owned by Grace and Mamie Strom located on Old Selma Road in Montgomery was robbed on or about August 19, 1987. An investigator from the Montgomery County Sheriff's Department was told by a Gerald White, a suspect in an unrelated crime, that John White (a relative of his) and Tommy Washington had robbed the store. The investigator went with other deputies to John White's house with a warrant for his arrest for an escape charge from 1986. In approaching John White's house, the investigator saw Tommy Washington and arrested him. Washington was indicted for two counts of robbery in the first degree.
The trial court found the above arrest to be unsupported by probable cause and thus illegal. The defendant filed a motion in limine requesting the suppression of the fruits of the arrest. The trial court did not rule on this motion. During further pretrial proceedings, the defendant and the state entered into plea negotiations. They reached an agreement that provided that the state would orally amend the indictment to charge the defendant with robbery in the second degree and, upon the defendant's entering a plea of guilty to such a charge, would recommend a sentence of 15 years.
The hearing held for the entry of the guilty plea went smoothly until the defendant was requested by the court to give a factual basis for the plea. At that point, the defendant "equivocated," and the trial court became concerned that there might not be a sufficient factual basis for the plea. Counsel for the defendant requested an opportunity to talk with the defendant, and the court allowed it. When the defendant was ready to state his factual basis for the plea, the trial court was involved with another trial and could not take the plea. The state secured a continuance, purported to withdraw the plea offer, and then advised the court that it would proceed to trial against the defendant on the charge of robbery in the first degree. The trial court denied the defendant's motion to enforce the plea agreement.
Defendant's counsel then moved to withdraw as counsel. This motion was denied by the trial court. The state then moved for consolidation of the trials of John White *Page 1305 
and Washington. The trial court granted this motion, over objections by both defense counsel. The court was apprised that each defendant would "point the finger" at the other, accusing each other of committing the crime. Counsel for Washington then filed a motion to sever, which was denied.
The cases proceeded to trial as consolidated. When a portion of the trial had been completed, the trial court severed the cases and granted White a mistrial. The trial court stated the following to the jury as his reasons for the severance:
 "THE COURT: Let me tell the jury where we are in this case. You will notice Mr. White is not sitting over here anymore. So let me tell you why he is not sitting over there. Mr. White and Mr. Washington's cases were consolidated for trial. That required the decision by me to consolidate them for trial because they were indicted separately in this case.
 "There is a continuing duty on the trial judge in any case when it appears that their defenses to the charges may be so antagonistic that you couldn't properly decide the case. And in this case it seemed that Mr. White was going to be pointing the finger at Mr. Washington and Mr. Washington was going to be pointing the finger at Mr. White in this case. And I have come to the conclusions that under those circumstances and under the circumstances of this case, [the] proper course of action under the Rules of Criminal Procedure was for me to sever Mr. White from this trial. So he has been removed from this trial. His case will be tried at a later date. We are going to continue on in Mr. Washington's case."
Washington was left to continue as the sole defendant in the trial that was already underway. The jury found Washington guilty on both counts, and he was sentenced to 35 years in the penitentiary. The Court of Criminal Appeals affirmed, without an opinion, 550 So.2d 1095, and later denied rehearing, 553 So.2d 146.
 Issue
The issue we must consider is whether the defendant was irreparably prejudiced by the failure of the trial court to sever the cases at an earlier point in the prosecution. Because we reverse and remand as to this issue, we do not address the remaining issues raised by the defendant.
Rule 15.4(d), Alabama Temporary Rules of Criminal Procedure, provides for a severance of defendants in a joint trial when "a defendant . . . may be prejudiced to the extent that a fair trial cannot be afforded." A review of the law in Alabama and the record in this case reveals that the consolidation and the subsequent severance of this case by the trial court amounted to reversible error.
In Hill v. State, 481 So.2d 419 (Ala.Crim.App. 1985), the Court of Criminal Appeals stated the rule to be as follows:
 "The decision whether to grant a severance, or order a joinder of defendants, lies within the broad discretion of the trial court. This Court will not overturn that decision absent an abuse of discretion. United States v. Webster, 734 F.2d 1048, 1052 (5th Cir.), cert. denied sub nom., Hoskins v. United States, 469 U.S. 1073, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984). 'In order to establish an abuse of discretion, the defendant must show that he "received an unfair trial and suffered compelling prejudice against which the trial court was unable to afford protection." See U.S. v. Berkowitz, 662 F.2d [1127] at 1132 [(5th Cir. 1981)].' Webster, 734 F.2d at 1052.
 " 'When codefendants allege antagonistic defenses as a ground for severance, this Court has applied very specific tests to determine whether the trial was unfair. To compel severance, the defenses must be antagonistic to the point of being irreconcilable and mutually exclusive. See, United States v. Berkowitz, 662 F.2d at 1133; United States v. Crawford, 581 F.2d [489] at 491 [(5th Cir. 1978)]. The defenses must be so antagonistic that the jury, in order to believe the defense of one defendant, must necessarily disbelieve *Page 1306 
the other defendant's defenses. Id.' Webster, 734 F.2d at 1053.
". . . .
 " 'There is no more classic situation of the need for a severance than one in which two co-defendants each place the blame for a crime on the other.' State v. Singleton, 352 So.2d 191, 192
(La. 1977). See also, R. Dawson, Joint Trials of Defendants in Criminal Cases: An Analysis of Efficiencies and Prejudices, 77 Mich.L.Rev. 1379, 1422-1426 (1979).
". . . .
 "We agree that, 'antagonistic defenses do not per se require severance, even if the defendants are hostile or attempt to cast the blame on each other.' United States v. Arruda, 715 F.2d 671, 679
(1st Cir. 1983). 'Antagonism of defenses requires severance only where the defenses are so inconsistent that the jury would have to believe one defendant at the expense of the other; the conflict alone establishes the guilt of a defendant.' United States v. Drougas, 748 F.2d 8, 20 (1st Cir. 1984). '[S]everance is required because of "mutually antagonistic defenses" only when the defenses are so antagonistic that "the acceptance of one party's defense will preclude the acquittal of the other." ' United States v. Hendrix, 752 F.2d 1226, 1232 (7th Cir.), cert. denied sub nom., Merritt v. United States, 471 U.S. 1021, 105 S.Ct. 2032, 85 L.Ed.2d 314 (1985)."
Hill, 481 So.2d at 424-25. That court has followed that same rule in Holsemback v. State, 443 So.2d 1371
(Ala.Crim.App. 1983); Herron v. State, 481 So.2d 425
(Ala.Crim.App. 1985); and Chapman v. State, 487 So.2d 269
(Ala.Crim.App. 1986).
Even though the trial court was informed by counsel for both defendants that each defendant would be "pointing the finger" at the other and arguing the other defendant's guilt as his own defense, he allowed the trial to proceed with the cases consolidated. Prior to the severance, both victims and the arresting officer had testified before the jury. At the point at which the other defendant's statement was to be introduced into evidence, the trial judge excused the jury, allowed all trial counsel to hear the original taped statement by defendant White, and then severed the cases. The severance occurred before White gave any testimony or statement against Washington. The record reveals that the opening statement of White's attorney included the following assertions:
 "If it please the Court, ladies and gentlemen of the jury, . . . I represent one of the defendants over there named John Edward White. . . . [H]e is charged with robbery, two counts, two separate indictments of robbery. And to that charge he pleads not guilty. We ask each and every one of you to be mindful over here and give all the testimony your close, careful, considerate attention. . . . This is what you call the cut-throat defense.
 "Cut-throat defense is when the State of Alabama . . . tries to convict two people of the same crime. And then you have got the two defendants over there saying that the other one did it. In other words, Mr. John White is going to testify over there that Tommy Washington was the one that committed the crime."
The above opening statement shows clearly that the jury was immediately informed that the defendants' positions would be antagonistic to each other. In light of the discussion inHill, supra, the need for severance was established by this opening statement, and the trial court erred in allowing the cases to continue further as consolidated. For this reason, we reverse the judgment and remand the case for a new trial.
REVERSED AND REMANDED.
MADDOX, JONES, ALMON, SHORES, ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur. *Page 1307