**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 91-5645
_____

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

versus

WILLIAM M. KELLY,
Defendant-Appellant.

_____

Appeal from the United States District Court
For the Western District of Texas
_____

(September 16, 1992)

Before WISDOM, SMITH, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

William M. Kelly was indicted and tried for conspiring to violate the Bank Bribery Act, 18 U.S.C. § 215, and the Bank Fraud Act, 18 U.S.C. § 1344. A jury subsequently found Kelly guilty on all charged counts. On appeal, Kelly argues that the district court improperly: (1) denied his motion for continuance; (2) denied his request to produce evidence; and (3) admitted the hearsay statements of a coconspirator. Kelly also contends that the Bank Bribery Act is unconstitutionally vague as applied to his case. Finding no error, we affirm Kelly's conviction.

**I**

The facts of this case are straightforward and uncontested. Kelly was a senior vice-president at the Valley-Hi National Bank

in San Antonio, Texas.  Kelly's two co-defendants had previously been his customers: John T. Haney was a customer at Valley-Hi, and Leslie A. Leverett was a business associate of Haney's.[1]

The other party involved in this case, Steven A. Marburger, was president of La Hacienda Savings Association.  Haney was a customer at La Hacienda, and had previously befriended Marburger. Haney introduced Leverett to Marburger.  Later, Marburger told the two men he needed money, and Haney and Leverett told Marburger that they would help him get a loan from Kelly, if he would help Kelly get a loan from La Hacienda.

Kelly subsequently applied to La Hacienda for a $100,000 loan.  At Haney's and Leverett's direction, Kelly contacted Marburger by telephone.  Kelly and Marburger agreed to make reciprocal loans to each other to cover their respective financial needs.  Kelly then met Marburger in his office to fill out the loan application form, even though he had no collateral to secure the loan.

Kelly told Marburger that he would be glad to consider a loan request from him.  Marburger requested a $125,000 loan from Valley-Hi.  Valley-Hi's president, however, denied the loan request because of Marburger's extensive debt.  When Marburger learned that Valley-Hi had denied his loan request, he refused to approve Kelly's loan request because he thought that Kelly had reneged on the "loan swap."  Marburger later determined, however,

---

[1]  After the district court denied the motions for severance and continuance, Kelly and Haney proceeded to a jury trial. Leverett was a fugitive and was not tried with Kelly and Haney.

that Kelly had not personally denied his loan, and eventually provided Kelly with a $50,000 unsecured line of credit from La Hacienda.

To obtain his money, Marburger then used Leverett as a surrogate borrower. Leverett applied for and received a $125,000 loan from Valley Hi. To secure the loan, Leverett submitted numerous financial statements, including papers showing that he owned a mortgage company. Kelly took personal charge of the loan, and it was quickly approved. Kelly issued a $50,000 cashier's check directly to Leverett, deposited $25,000 in an account controlled by Haney, and used the remaining $50,000 to purchase a certificate of deposit. Haney and Leverett gave $50,000 of the loan proceeds to Marburger.

The defendants' troubles began when Valley-Hi's board of directors subsequently discovered that the name of the institution reported on Leverett's financial statement and the name of the institution listed on the line of credit were different, and that a financial institution with the same name as that listed on Leverett's financial statement had filed for bankruptcy. Kelly attempted to remedy this situation by stating to the board of directors that he had contacted the accountant who had audited the mortgage company's financial statement and that the accountant had verified the financial statement.

In the meantime, Marburger was indicted by a federal grand jury for "kiting" checks.[2] Before the jury returned a verdict, Marburger pled guilty, and agreed to cooperate with the Government. As part of his plea agreement, he telephoned Haney and Kelly, and recorded his conversations with them. Marburger then became the Government's principal witness in Kelly's trial, and testified that he and Kelly had arranged a "loan swap" with the participation of Haney and Leverett.

## II

### A

Kelly contends that the district court erred in denying his second motion for continuance, and that he was "materially prejudiced by such denial." The grant or denial of a continuance is within the sound discretion of the trial court, and will be disturbed on appeal only for abuse of discretion. *See United States v. Shaw*, 920 F.2d 1225, 1230 (5th Cir.) (quotation omitted), *cert. denied*,___U.S._, 111 S. Ct. 2038 (1991); *United States v. Uptain*, 531 F.2d 1281, 1285 (5th Cir. 1976) (citations omitted). Kelly must demonstrate an abuse of discretion resulting in serious prejudice. *See United States v. Webster*, 734 F.2d 1048, 1056 (5th Cir.) (citation omitted), *cert. denied*, 469 U.S. 1073, 105 S. Ct. 565 (1984). Furthermore, "[w]hether a continuance was properly denied depends on the circumstances of the case." *See United States v. Hopkins*, 916 F.2d 207, 217 (5th

---

[2] At Kelly's federal trial, Marburger stated that he would have La Hacienda cashier's checks issued, and then put the money to his own use.

-4-

Cir. 1990) (citation omitted).  Relevant circumstances may
"include the amount of time available, the defendant's role in
shortening the time needed, the likelihood of prejudice from a
denial, and the availability of discovery from the prosecution."
*Id.*[3]

Kelly argues that his counsel was prevented from preparing
adequately, because his counsel had a conflicting trial set for
the same day as Kelly's trial, and that the Government's alleged
failure to timely comply with its discovery obligations resulted
in material prejudice to his case.  The Government responds that
Kelly was not prejudiced by the denial of another continuance, as
he did not show how the granting of another continuance would
have significantly aided his case.  Furthermore, regarding the
alleged tardy production of discovery materials, the Government
asserts that Kelly had access to the tapes throughout the
pretrial proceedings and, that, even if there was some delay in
providing Kelly with a final copy of the transcript, it did not
result in prejudice to Kelly's substantial rights.

---

[3] *See also Uptain*, 531 F.2d at 1286-87 (noting that cases
regarding motions for continuance are numerous and involve
varying factual contexts, and that in assessing claims of
inadequate preparation time the court considers such factors as
the quantum of time available for preparation, the likelihood of
prejudice from denial, the defendant's role in shortening the
effective preparation time, the degree of complexity of the case,
and the availability of discovery from the prosecution)
(citations omitted); *United States v. Hamilton*, 492 F.2d 1110,
1112-13 (5th Cir. 1974) (no abuse of discretion in denying motion
for continuance where defendant alleged that Government failed to
provide a transcript of preliminary hearing, because appellant
had shown no prejudice).

The trial was originally set for July 16, 1990.  Kelly's co-defendant, Haney, moved for a continuance on July 5, 1990, and the district court granted the motion and rescheduled the trial for September 10, 1990.  On August 28, 1990, Kelly submitted his own motion for continuance, and the district court granted this motion and rescheduled the trial for October 29, 1990.  Thus, Kelly received the benefit of two continuances, by which he received approximately three additional months to prepare for trial.  On October 19, Kelly moved for a continuance of the October 29 trial date.  This motion was denied.  On October 29, 1990, Kelly filed a renewed motion for continuance, and the district court denied the motion.[4]

As the Government notes, the record does not indicate that Kelly's case was so complicated as to warrant additional delay.  In addition, the record does not indicate that Kelly's counsel failed to provide an adequate defense.  His counsel participated in pretrial preparation, and actively participated in trial by cross-examining the Government's witness and calling witnesses on Kelly's behalf.  An examination of the totality of circumstances indicates that Kelly's counsel had sufficient time to prepare for the case.  *See Webster*, 734 F.2d at 1056-57 (when claims of

---

[4]  As grounds for the motion for the continuance, Kelly pointed out that his counsel had a conflict with the October 29, 1990 trial date, as his counsel had another trial set in federal court on this same date.  In addition, Kelly stated that: (1) the other case was a multi-defendant case which would take several weeks to try; (2) his counsel was a solo practitioner and his time would be consumed by the other trial; (3) his case was complex and his counsel had not had adequate time to prepare; and (4) discovery was incomplete.

insufficient time for preparation are advanced, the court of appeals examines the totality of circumstances to determine if the continuance should have been granted).  Furthermore, regarding any delays in discovery, Kelly has failed to show how any alleged delay prejudiced him.  *See United States v. Hamilton*, 492 F.2d 1110, 1112-13 (5th Cir. 1974) (abuse of discretion is defined as a trial error that harms or prejudices the defendant).  Accordingly, the district court did not abuse its discretion in denying Kelly's motion for continuance.

**B**

Kelly also argues that the district court erred in refusing to require the Government to produce documentary materials related to other crimes by Marburger.  The evidence that Kelly contends should have been produced is evidence related to the $50,000 he allegedly gave to Marburger.  He alleges that the Government should have produced evidence related to the check-kiting charges against Marburger.  By having such evidence, Kelly argues that he would have discovered who the cashier's checks were payable to, and how Marburger received the funds.  Kelly contends that he would have been able to show that Marburger received the $50,000 not from him, but from another source.

The Government argues that, because the cashier's checks were noted in Marburger's indictment[5], Kelly had sufficient

---

[5]  Kelly had access to Marburger's indictment, which noted the kited checks.  *See* Defendant's Exhibit 3, *included in* Record on Appeal, *United States of America v. William M. Kelly*, No. 91-5645 (5th Cir.) (copy of twenty-six count indictment against Stephen A. Marburger).

evidence to argue that Marburger obtained the $50,000 without Kelly's participation. The Government also contends that Kelly had the opportunity to cross-examine Marburger about the issuance of the $50,000 check from La Hacienda, allegedly issued with the funds from Kelly.

"It is well[-]settled that the government has the obligation to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment." *Pennsylvania v. Ritchie*, 480 U.S. 39, 57, 107 S. Ct. 989, 1001 (1987), *citing Brady v. Maryland*, 373 U.S. at 87, 83 S. Ct. at 1196 (other citation omitted). "Suppressed evidence is material `if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Cordova v. Collins*, 953 F.2d 167, 171 (5th Cir. 1992) (citation omitted), *petition for cert. filed* (Jan. 21, 1992). This court applies a strict standard of materiality: the alleged exculpatory evidence must be "materially favorable to [Kelly] as to guilt, punishment, or both." *United States v. Masat*, 948 F.2d 923, 932 (5th Cir. 1991) (citation omitted), *petition for cert. filed* (Apr. 3, 1992).

Kelly has failed to show how the production of the kited checks[6] "were material to his defense, how the documents' production would have changed the outcome of the case, or that the documents' failure to be produced has undermined the confidence in the integrity of the outcome of his trial." *Id.*

---

[6] *See supra* note 2.

Kelly's counsel examined Marburger about the issuance of the $50,000 cashier's check, and Marburger stated that Kelly's $50,000 was the source of the check. His counsel cross-examined Marburger about the kited checks, thereby fleshing out the possibility that Kelly's $50,000 was not the source of the check to Marburger's company, a possibility which the jury apparently rejected. Kelly has failed to show that the outcome of this case would be different had the Government provided discovery of the kited checks.

## C

Kelly contends that the district court also erred in denying his motion for relief from prejudicial joinder, on the ground that his defense was prejudiced by the admission of incriminating hearsay statements by his co-defendant Haney. "As a general rule, defendants who are indicted together are tried together." *United States v. Featherson*, 949 F.2d 770, 773 (5th Cir. 1991) (citation omitted), *cert. denied*,_U.S._, 112 S. Ct. 1698 (1992), *cert. denied*,_U.S._, 112 S. Ct. 1771 (1992). This court reviews a district court's denial of a motion for severance for abuse of discretion. *Id.* To show abuse of discretion, "the defendant must show that he `received an unfair trial and suffered compelling prejudice against which the trial court was unable to afford protection.'" *United States v. Webster*, 734 F.2d 1048, 1052 (5th Cir.) (citation omitted), *cert. denied*, 469 U.S. 1073, 105 S. Ct. 565 (1984).

Kelly alleges prejudice because a 1987 tape recording of Marburger and Haney was not redacted according to the terms of the district court order. In addition, Kelly claims that an unredacted transcript of this tape was given to the jury to read while the tape was played. Kelly also claims error in admitting statements made in 1986 by Haney which Marburger and his former business secretary recounted at trial.

The Government argues that the 1987 tape between Haney and Marburger was properly admitted because the district court gave proper limiting instructions to the jury and because the district court ordered that the transcript be redacted only "out of an abundance of [caution]." Furthermore, the Government asserts that the tape did not provide incriminating statements that implicated Kelly. In addition, the Government alleges that the 1986 statements by Haney were properly admitted because Kelly and Haney were members of the same conspiracy.

**(1)**

A tape of a 1987 conversation between Haney and Marburger was played to the jury during Marburger's testimony. Kelly objected to the playing of the tape,[7] as well as the transcript that accompanied the tape.[8] Kelly argues that, although the tape

---

[7] *See* Government Exhibit 6, *included in* Record on Appeal (tape of July 16, 1987 conversation between Marburger and Haney).

[8] *See* Government Exhibit 7, *included in* Record on Appeal (transcript of July 16, 1987 conversation between Marburger and Haney).

was redacted, the transcript was not, violating *Bruton v. United States*.[9]

In *Bruton*, the Supreme Court "held that the admission of incriminating nontestimonial statements made by one defendant, unavailable for cross-examination at trial, created a substantial risk of prejudice to the nondeclarant codefendant, because the jury might))despite limiting instructions to the contrary))consider them against the nondeclarant."[10]  The Court spoke of "powerfully incriminating extrajudicial statements of a codefendant . . . [that] are deliberately spread before the jury in a joint trial."[11]   This holding was clarified in *Richardson v. Marsh*,[12] in which the Court stated that the Confrontation Clause of the Sixth Amendment "is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when . . . the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence."[13]

In considering such claims under *Bruton*, this court has stated that "[a] critical consideration in *Bruton* claims is

---

[9]   391 U.S. 123, 88 S. Ct. 1620 (1968), *appeal after remand*, 416 F.2d 310 (8th Cir. 1969), *cert. denied*, 397 U.S. 1014, 90 S. Ct. 1248 (1970).

[10]   *Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620 (1968), *cited in United States v. Basey*, 816 F.2d 980, 1004 (5th Cir. 1987).

[11]   *Bruton*, 391 U.S. at 135-36, 88 S. Ct. at 1627-28.

[12]   481 U.S. 200, 107 S. Ct. 1702 (1987).

[13]   *Id.* at 211, 107 S. Ct. at 1709.

whether the out-of-court statement at issue clearly implicates the codefendant; if the statement does not do so, no serious *Bruton* issue is presented." *United States v. Basey*, 816 F.2d 980, 1005 (5th Cir. 1987). Furthermore, even if a statement is admitted in violation of the *Bruton* principle, "the error may be harmless if the statement's impact is insignificant in light of the weight of other evidence against the defendant." *Id.; see also United States v. Greer*, 939 F.2d 1076, 1096 (5th Cir.) (even if statement admitted in violation of *Bruton*, error is harmless if statement's impact is insignificant in light of other evidence against defendant) (citation omitted), *vacated by* 948 F.2d 934 (5th Cir. 1991), *relevant part reinstated*, No. 90-1348, 1992 U.S. App. LEXIS 17408 (5th Cir. July 30, 1992) (en banc) (per curiam).

In this case, the Haney-Marburger conversation, relayed in the tape and transcript did not specifically name Kelly as the perpetrator of the alleged events. Rather, the conversation simply catalogues interactions with Kelly. Any concrete connection between Kelly and Marburger "only came through other evidence presented by the government." *Greer*, 939 F.2d at 1096. The Government still had to, and did, present other evidence to link Marburger and Kelly. *Id.* For example, the Government offered Marburger's testimony, as evidence in the form of checks, and the testimony of Valley-Hi's president. Thus, the district court did not deprive Kelly of his Sixth Amendment rights.

Kelly similarly argues that statements made by Haney in 1986, and quoted by Marburger and Judy Hilton,[14] also violate *Bruton* because they plainly incriminated Kelly and because no limiting instruction could protect Kelly from the risk of prejudice.  The Government argues that the statements made in 1986 by Haney were properly admitted because they were made during the course of a conspiracy.

The district court admitted the statements as a coconspirator statement under Fed. R. Evid. 801(d)(2)(e).[15]  "For a co-conspirator's statement to be admitted pursuant to Rule 801(d)(2)(E), there must be a conspiracy, the statement must be made in the course of the conspiracy, and the declarant and the defendant must be members of the conspiracy." *United States v. Vasquez*, 953 F.2d 176, 182 (5th Cir.) (citation omitted), *cert.*

---

[14]  Hilton, an executive secretary to Marburger at La Hacienda in the summer of 1986, testified that in the summer of 1986, she heard a conversation between Marburger, Haney and Leverett in which Haney told Marburger not to worry because he would help Marburger get the money he needed, and that they could probably get it from Kelly. *See* Record on Appeal, vol. V at 180-81.  Marburger also testified that in the summer of 1986 Haney told him that he had some friends who would help Marburger get a loan, and that Kelly was one of these friends. *See* Record on Appeal, vol. IV at 70-71.

[15]  Rule 801(d)(2)(E) of the Federal Rules of Evidence states     that:
> (d) **Statements which are not hearsay.**  A statement is not hearsay if--
> * * *
> **(2) Admission by party-opponent.**  The statement is offered against a party and is . . . (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

*denied*,_U.S._, 112 S. Ct. 2288 (1992). All these elements must be established by a preponderance of the evidence. *Id.* at 183. The evidence in this case shows the existence of a conspiracy for a loan-swap, statements made during the course of this loan-swap arrangement, and the participation of Haney, Marburger and Kelly in this loan-swap arrangement. Thus, the district court properly admitted the statements as coconspirators' statements. *Id.*

## D

Lastly, Kelly contends that the statute under which he was convicted, 18 U.S.C. § 215, is "unconstitutionally vague as applied to him."[16] He argues that he could not have reasonably

_____

[16] Kelly was convicted under the 1984 version of 18 U.S.C. § 215, which provides:
> (a) Whoever, being an officer, director, employee, agent, or attorney of any financial institution, bank holding company, or savings and loan holding company, except as provided by law, directly or indirectly, asks, demands, exacts, solicits, seeks, accepts, receives or agrees to receive anything of value, for himself or for any other person or entity, other than such financial institution, from any person or entity for or in connection with any transaction or business of such financial institution; or

> (b) Whoever, except as provided by law, directly or indirectly, gives, offers, or promises anything of value to any officer, director, employee, agent, or attorney of any financial institution, bank holding company, or savings and loan holding company, or offers or promises any such officer, director, employee, agent, or attorney to give anything of value to any person or entity, other than such financial institution, for or in connection with any transaction or business of such financial institution, shall be fined not more than $5,000 or three times the value of anything offered, asked, given, received, or agreed to be given or received, whichever is greater, or imprisoned not more than five years, or both; but if the value of anything offered, asked, given, received, or agreed to be given or received does not exceed $100,

-14-

understood that the statute prohibited his conduct because it is not clear that a loan constitutes "anything of value" under the statute, thereby making the statute too vague to give him notice that accepting the loan from La Hacienda or granting the loan to Leverett was prohibited. The Government asserts that 18 U.S.C. § 215 is not unconstitutionally vague as applied to the facts of this case because Kelly cannot demonstrate that he could not have reasonably understood that his conduct in creating a reciprocal loan agreement was prohibited by the statute.

In *United States v. Wicker*,[17] we considered a vagueness argument much like Kelly's regarding the 1984 version of 18 U.S.C. § 215. We stated that a "statute violates due process if it is so vague that a person of ordinary intelligence does not have a reasonable opportunity to know what is prohibited, and if the law provides no explicit standards for enforcement."[18] To show that section 215 is unconstitutionally vague, Kelly "must show that he could not have reasonably understood that *his* conduct was prohibited by the statute."[19] As was the case in *Wicker*, Kelly has failed to make such a showing in this case.

---

> shall be fined not more than $1,000 or imprisoned not more than one year, or both.

18 U.S.C. § 215 (1984).

[17] 933 F.2d 284 (5th Cir.), *cert. denied*,_U.S._, 112 S. Ct. 419 (1991).

[18] *Id.* at 288, *citing Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S. Ct. 2294, 2298 (1972).

[19] *Id., citing Parker v. Levy*, 417 U.S. 733, 756, 94 S. Ct. 2547, 2561 (1974) (emphasis in *Wicker*).

Promising to give a loan from his bank, in order to secure a loan from another, cannot reasonably be understood to be anything other than giving, offering, or promising a thing of value, or seeking, accepting, receiving or agreeing to receive anything of value contrary to the proscriptions of section 215.[20]  The evidence shows that Kelly knew the proceeds from his loan to Leverett would go to Marburger, who in turn would make a loan from La Hacienda to Kelly.  Kelly's actions were covered by section 215, and he has not shown that he could not have reasonably understood that his conduct was prohibited by the statute))this is especially so given Congress's intent in enacting section 215 to "remove from the path of bank officials the temptation of self enrichment" at the borrower's or bank's expense.  *United States v. Jumper*, 838 F.2d 755, 758 (5th Cir. 1988) (citation omitted).

## III

For the foregoing reasons, we AFFIRM.

---

[20]  *See supra* note 16.