# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-50376

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

DAVID MEDRANO-RODRIGUEZ,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

April 8, 2015

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Western District of Texas
USDC No. 2:12-CR-785-1

Before REAVLEY, SMITH and GRAVES, Circuit Judges.

PER CURIAM:*

Defendant-Appellant David Medrano-Rodriguez challenges the application of a two-level sentencing enhancement for making a credible threat of violence in connection with a drug trafficking offense. We affirm.

## I. Factual and Procedural Background

David Medrano-Rodriguez pleaded guilty to possession with intent to distribute 500 grams or more of methamphetamine. 21 U.S.C. § 841(a)(1),

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-50376

(b)(1)(A)(viii). The presentence report ("PSR") described the circumstances of the offense. On April 17, 2012, Border Patrol agents apprehended four aliens near Dimmit County, Texas, all of whom admitted to being in the United States illegally. After the agents received notice that an abandoned bundle of marijuana was discovered nearby, the agents searched the aliens' backpacks. Medrano-Rodriguez consented to a search. The search revealed four generic brand fruit cans inside his backpack. Medrano-Rodriguez took responsibility for the items in the backpack and told the agents that the cans contained food. The PSR reflects that drug detection canines did not detect drugs.

Medrano-Rodriguez and the other aliens were transported to the Laredo West Station for "processing." Subsequently, agents transferred custody of the aliens to the Carrizo Springs, Texas, Border Patrol Station. Agents interviewed one of the female aliens, Dilcia Mabel Castillo-Ruiz, who indicated that she was part of a group of 60 illegal aliens that crossed into the United States in April 2012. She stated that Medrano-Rodriguez was one of the four guides for the aliens. According to the PSR:

> During the apprehension she was placed in a small group with other aliens who had been arrested, including Medrano-Rodriguez. She indicated Medrano-Rodriguez had his backpack in his possession during [processing] (Border Patrol agents had not discovered the drugs in the fruit cans at this time). While sitting on a bench, Medrano-Rodriguez threatened her by telling her not to say anything because she does not know who he is and what he can do. Castillo-Ruiz indicated she was fearful of Medrano-Rodriguez.

Castillo-Ruiz told the agents that Medrano-Rodriguez had drugs inside the fruit cans in his backpack. The cans had been welded or soldered closed. When opened, agents discovered that each can contained a bundle of methamphetamine wrapped in cellophane. The DEA determined that the

2

No. 14-50376

seized methamphetamine had a net weight of 1.47 kilograms and a purity level of 99.7 percent.

Applying the 2012 Sentencing Guidelines, the PSR recommended a base offense level of 36 pursuant to U.S.S.G. § 2D1.1(a)(5), for an offense involving 500 grams to 1.5 kilograms of "ice."[1]  Among other enhancements not challenged on appeal, the PSR recommended a two-level increase for making a credible threat to use violence pursuant to § 2D1.1(b)(2).  The violence enhancement was based on Castillo-Ruiz's statement that Medrano-Rodriguez threatened her about speaking to the agents.

Medrano-Rodriguez filed written objections to the PSR, challenging, *inter alia,* the violence enhancement.  He argued that § 2D1.1(b)(2) did not apply  to the threat he made after he was in the custody of the Border Patrol, that the statement was not a threat to use violence, and that it was not a credible threat.[2]

At sentencing, the district court overruled Medrano-Rodriguez's objections.  The court adopted the PSR, and determined that the advisory guidelines range was 292 to 365 months.  Medrano-Rodriguez requested a downward variance, which the district court granted.  The court sentenced Medrano-Rodriguez to a below-guidelines sentence of 188 months of imprisonment and five years of supervised release.  Medrano-Rodriguez appeals his sentence.

## II. Analysis

We review the district court's interpretation and application of the Guidelines de novo and its factual findings for clear error.  *United States v.*

---

[1] Note (C) to the § 2D1.1(c) Drug Quantity Table defines "ice" as d-methamphetamine hydrochloride with a purity of at least 80%.

[2] Medrano-Rodriguez has not raised the latter two issues on appeal, and we do not address them.

3

No. 14-50376

*Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008).  On appeal, Medrano-Rodriguez argues only that his threat of violence is not covered by § 2D1.1(b)(2) because it was not made "during" a drug trafficking offense.

U.S.S.G. § 2D1.1, which is applicable to drug trafficking offenses, provides that a defendant's offense level is increased by two levels if he "used violence, made a credible threat to use violence, or directed the use of violence." § 2D1.1(b)(2).   The background commentary to § 2D1.1 provides that subsection (b)(2) implements § 5 of the Fair Sentencing Act ("FSA"). § 2D1.1(b)(2), comment. (backg'd).  Section 5 of the FSA directs the Sentencing Commission to "review and amend the Federal sentencing guidelines to ensure that the guidelines provide an additional penalty increase of at least 2 offense levels if the defendant used violence, made a credible threat to use violence, or directed the use of violence during a drug trafficking offense."  FSA, Pub. L. No. 111-220, § 5, 124 Stat. 2372.  Accordingly, in amending § 2D1.1 to create the violence enhancement, the Commission explained that § 2D1.1(b)(2) was a new specific offense characteristic that implemented § 5 of the FSA. Supplement to the 2010 Guidelines Manual, App. C, Amend. 748, at 43 (Nov. 1, 2010) (quoting § 5 of the FSA).

Medrano-Rodriguez argues that Congress and the Sentencing Commission limited the application of § 2D1.1(b)(2) to the use or threatened use of violence "during a drug trafficking offense," even though the text of § 2D1.1(b)(2) does not contain such a textual limitation.  He argues that he did not make a threat "during" the drug trafficking offense, but instead made the threat after he was in custody.

We need not address the many legal and factual technicalities of this argument, because Medrano-Rodriguez's argument fails by its own terms. Even if we were to accept his argument that the history of § 2D1.1(b)(2) and the commentary to the Guidelines amendment limit the violence enhancement

4

to defendants who used or threatened violence "during a drug trafficking offense," the enhancement was properly applied here.  The PSR is clear that Medrano-Rodriguez made the threat while he still had the backpack containing the undetected methamphetamine.  The fact that he was in custody for an immigration violation or on possible suspicion of a different offense does not alter our conclusion.  Medrano-Rodriguez continued to possess the drugs after his apprehension by the Border Patrol, and he threatened Castillo-Ruiz in an attempt to avoid detection of his drug trafficking offense.  Thus, the threat occurred "during a drug trafficking offense" according to any reasonable construction of the term.  The district court correctly applied § 2D1.1(b)(2).

### III.  Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.