# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-51184

United States Court of Appeals
Fifth Circuit

**FILED**
June 1, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

ELI TORRES; ALFREDO TAPIA, III, also known as Naco,
also known as Alfredo Tapia,

Defendants - Appellants

Appeals from the United States District Court
for the Western District of Texas
USDC No. 2:11-CR-1780-14

Before DAVIS, JONES, and CLEMENT, Circuit Judges.

EDITH H. JONES, Circuit Judge:*

This appeal arises from the conviction of two defendants for participating in drug distribution and firearms offenses as members and conspirators in a prison gang, the Texas Syndicate. The defendants raise several challenges to their sentences and convictions. We find no reversible error and affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-51184

## BACKGROUND

The FBI and other local law enforcement agencies began investigating a prison gang, the Texas Syndicate ("TS"), in August 2009 for narcotics distribution and murder carried out within and outside the Texas prison system. In August 2011, the district court granted the Government's application to authorize the FBI to intercept the wire and electronic communications of Eli Torres, a leader in the TS, as well as other targeted individuals.

Alfredo Tapia, III, and fourteen codefendants were charged in the original indictment with conspiracy to possess with intent to distribute 500 grams or more of cocaine (Count One) and with conspiracy to possess with intent to distribute 100 kilograms or more of marijuana (Count Two). Torres was charged in a superseding indictment with conspiracy to possess with intent to distribute 500 grams or more of cocaine (Count One) and distribution of 500 grams or more of cocaine within 1000 feet of a school (Count Two).

The following TS members or associates pled guilty and testified against Tapia and Torres. Mark Anthony Vela, a TS prospect,[1] was the main supplier of the narcotics in Uvalde and surrounding Texas counties. Charles Quintanilla, a TS associate, was a drug dealer who purchased marijuana and cocaine from Vela for several years. Ervey Sanchez was a full TS member who supplied cocaine to Torres for resale and also supplied Vela. Finally, Thomas Cuellar, a former Sheriff's Deputy and Vela's brother-in-law, provided information on law enforcement efforts to Vela, obtained cocaine from both Vela and Tapia, and observed Tapia storing drugs for Vela.

---

[1] TS operates under a specified hierarchy of leadership consisting of a chairman, a lieutenant, and a sergeant. "Carnals" or "soldiers" are non-ranking members who carry out many of the criminal activities, and "prospects" are individuals attempting to become carnals. Prospects are typically used to conduct the most violent activities on behalf of the TS.

No. 15-51184

Torres filed a motion to suppress the evidence obtained from the electronic surveillance and for a *Franks* hearing to challenge the affidavit that supported the Government's wiretap application. The district court denied the motion. Torres and Tapia were tried together before a jury and were convicted as charged.

The district court enhanced Tapia's sentence for, among other things, obstruction of justice, possession of a dangerous weapon, and use of violence. With a total offense level of 40 and a criminal history category of I, the court granted Tapia a downward variance from a guidelines range of imprisonment of 292 to 365 months and sentenced him to 240 months of imprisonment on each count, to be served concurrently. The court also imposed a $3,000 fine and five-years of supervised release. The district court sentenced Torres to 300 months of imprisonment on each count, to be served concurrently, a $4,000 fine, and an eight-year term of supervised release. Torres and Tapia timely appealed.

## DISCUSSION

### I.    Tapia

Tapia challenges only the district court's adoption of three enhancements to his base offense level for sentencing. This court reviews the district court's application of the Sentencing Guidelines de novo and its findings of fact for clear error. *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008).

### A. Obstruction of Justice

Tapia challenges the two-level enhancement under U.S.S.G. § 3C1.1 for obstruction of justice. He asserts that although his testimony contradicts the testimony presented by the Government, and the jury ultimately found him guilty, this is insufficient for a finding of perjury. Tapia points to testimony in the record indicating that he was only a drug user and not a drug dealer. He

also contends that because he filed a written objection to the enhancement, the district court should have addressed each element of the perjury in a separate and clear finding.

Tapia objected to this enhancement in the trial court, but because he did not argue that the district court failed to make the separate findings on each claimed incident of perjury, this court's review is for plain error. "To preserve error, an objection must be sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction." *United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009); *United States v. Martinez*, 547 F. App'x 559, 563 (5th Cir. 2013). To demonstrate plain error, however, Tapia must show, inter alia, that the district court's error is clear or obvious and affects his substantial rights. *Puckett v. United States*, 556 U.S. 129, 135, 129 S. Ct. 1423, 1429 (2009).

Section 3C1.1 provides for a two-level increase in the offense level if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction" and this conduct relates to "the defendant's offense of conviction." U.S.S.G. § 3C1.1. The enhancement is warranted if the defendant commits perjury. § 3C1.1, comment n.4(b). A defendant commits perjury if he gives "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94, 113 S. Ct. 1111, 1116 (1993).

Preferably, the district court should make a separate and clear finding on each element of perjury, but a finding of obstruction "that encompasses all of the factual predicates for a finding of perjury" is sufficient. *Id.* at 95, 1117. "The sentencing court need not expressly find that the false testimony concerned a material matter; it is enough that materiality is obvious." *United*

*States v. Perez-Solis*, 709 F.3d 453, 470 (5th Cir. 2013) (internal quotation marks omitted).    Nor must a district court's finding in support of an obstruction-of-justice enhancement include an explicit finding of willfulness. *United States v. Miller*, 607 F.3d 144, 152 (5th Cir. 2010).

In a proper use of its discretion, the district court adopted the legal and factual findings of the PSR, which outlined testimony the probation officer deemed contradictory to Tapia's own testimony.    *United States v. Smith*, 804 F.3d 724, 737 (5th Cir. 2015); *United States v. Edwards*, 65 F.3d 430, 432 (5th Cir. 1995) ("[A] district court has wide discretion in determining which evidence to consider and which testimony to credit" at sentencing).    The court drew attention to the PSR's discussion of the intercepted wire and electronic communications between Vela and Tapia, which concerned Tapia's role in the drug conspiracy, including his role in submitting receipts and collecting money for Vela.    The court also noted that pen register data demonstrated Tapia's regular contact with Vela over 20 months.    The court discussed the trial testimony that Tapia had acted as a lookout at his residence while a man was held at gunpoint by a coconspirator for an unpaid drug debt.    The court's adopted findings conflict with Tapia's testimony that he merely used drugs, but was not involved in drug distribution.    The court committed no clear error in finding that Tapia's material disclaimers were not worthy of credence given the weight of the contradictory witness testimony, the intercepted wire and electronic communications, and the jury's verdict. *United States v. Smith*, 804 F.3d 724, 737 (5th Cir. 2015); *United States v. Flores*, 640 F.3d 638, 644 (5th Cir. 2011).    We conclude that the district court's application of § 3C1.1 was not erroneous.

**B. Possession of a Firearm**

Next, Tapia challenges the two-level enhancement for possession of a firearm in furtherance of a conspiracy.    He argues that the Government failed

to prove by a preponderance of the evidence that a weapon was possessed because the uncorroborated testimony of others conflicted with his own testimony.

Section 2D1.1(b)(1) provides that the base offense level of a defendant convicted of certain drug-related offenses should be increased by two-levels if "a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). Because a defendant may be held responsible for all reasonably foreseeable acts of the conspiracy, § 1B1.3(a)(1)(B), "a sentencing court may often infer foreseeability from a coconspirator's knowing possession of a weapon." *United States v. Zapata-Lara,* 615 F.3d 388, 390 (5th Cir. 2010) (internal quotation marks and citation omitted). Whether a dangerous weapon was possessed for purposes of the enhancement is a fact question reviewed for clear error, while the legal sufficiency of the facts found is a question reviewed de novo. *Id.*

The PSR relied on trial testimony describing how multiple firearms were possessed in furtherance of the conspiracy. Vela told his cellmate Sanchez following their arrests that he had asked Tapia to move firearms that Tapia had hidden for him. Further, Quintanilla testified that Tapia acted as a lookout at Tapia's own residence while another TS conspirator held Quintanilla's nephew Javier Garcia, Jr. at gunpoint until he agreed to give them a 55" TV to repay his TS drug debt. Moreover, TS carnals and an associate used firearms in three murders, a TS member sold a stolen rifle, and Sanchez sold a handgun.

The district court's finding that Tapia acted as a lookout while a debtor was held at gunpoint was not clearly erroneous as it was supported by Quintanilla's testimony, which the court was entitled to credit. *United States v. Harris,* 740 F.3d 956, 967 (5th Cir. 2014); *Edwards,* 65 F. 3d at 432. Tapia had the burden of showing that it was clearly improbable that the weapons

possessed by his coconspirators were connected with the offense. *United States v. Ruiz*, 621 F.3d 390, 396 (5th Cir. 2010). In addition, Tapia failed to address the PSR's recitation that multiple firearms were possessed in furtherance of the conspiracy; consequently, he has not demonstrated that the district court erred in assessing the two-level firearms enhancement.

### C. Use or Credible Threat of Violence

Tapia contends that the district court's two-level enhancement for a credible threat to use violence against Javier Garcia, Jr. was solely based on Quintanilla's uncorroborated testimony, which lacked sufficient indicia of reliability.

The district court may enhance a sentence two levels "[i]f the defendant used violence, made a credible threat to use violence, or directed the use of violence." § 2D1.1(b)(2). Relevant conduct includes "in the case of a jointly undertaken criminal activity . . . all acts and omissions of others that were . . . reasonably foreseeable in connection with that criminal activity." § 1B1.3(a)(1)(B)(iii).

The PSR recommended imposing this additional enhancement based on the incident where a drug debtor was held at gunpoint and threatened in Tapia's backyard. Information in the PSR is "presumed reliable and may be adopted by the district court without further inquiry if the defendant fails to demonstrate by competent rebuttal evidence that the information is materially untrue, inaccurate, or unreliable." *United States v. Sanchez*, 850 F.3d 767, 769 (5th Cir. 2017) (internal citations and quotation marks omitted). That Quintanilla's testimony about this incident was uncorroborated is not fatal, especially given that he was subject to cross examination at trial. *United States v. Gaytan*, 74 F.3d 545, 558 (5th Cir. 1996). The district court was entitled to credit Quintanilla's testimony, and was not required to accept

No. 15-51184

Tapia's "self-serving account of his role in the drug organization." *United States v. Buenrostro*, 868 F.2d 135, 138 (5th Cir. 1989).

Tapia has not shown that the information the district court relied on is materially untrue. *United States v. Young*, 981 F.2d 180, 185 (5th Cir. 1992). The threat and use of violence was reasonably foreseeable to those associated with the TS. Tapia interacted with several TS members over a long period of time; he distributed, received, and stored drugs, and received drug money on behalf of members. That at some point violence, committed by this gang for whom violence and intimidation are a *modus operandi,* would occur in Tapia's presence was reasonably foreseeable. The district court did not err.

### D. Cautionary Instructions

Tapia oddly contends that each enhancement was somehow improper because the district court should have issued a jury instruction cautioning the jury against relying on the testimony of Sanchez, Quintanilla, and Cuellar to the extent it was uncorroborated. In fact, the district court told the jury that the Government had called as witnesses alleged accomplices who had entered into favorable plea agreements. The court instructed the jury that such testimony should be received "with caution and weighed with great care," and the jury should not convict a defendant based on the unsupported testimony of an alleged accomplice unless it believed the testimony beyond a reasonable doubt. *See Tillery v. United States,* 411 F.2d 644, 647 (5th Cir. 1969). More to the point, however, the sufficiency of these cautionary instructions has nothing to do with the court's credibility assessments for sentencing purposes.

### II.    Torres

### A. Wiretap Order

Torres argues that the district court erred when, in August 2011, it granted the Government's request and authorized the interception of wire and electronic communications from his cell phone without a showing of the

8

requisite necessity. He contends that the change in TS leadership that had occurred in June 2011 did not meet the necessity requirement because the identity of these officers had been previously known. He objects that the wiretap was authorized in the last five weeks of a two-year investigation after traditional techniques already exposed his involvement and the scope of the conspiracy.

This court reviews the district court's issuance of a wiretap order for clear error and reviews de novo whether the Government satisfied the "necessity requirement" under 18 U.S.C. § 2518(1)(c). *United States v. Kelley*, 140 F.3d 596, 604 (5th Cir. 1998).

An application seeking authorization for a wiretap must show probable cause and must state "whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." § 2518(3)(a), (1)(c). Consequently, a judge must find that the Government has made the required showing of necessity. § 2518(3)(c). This necessity requirement is not meant to "foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted." *United States v. Webster*, 734 F.2d 1048, 1055 (5th Cir. 1984). Rather, it requires a showing that "in the particular investigation normal investigative techniques employing a normal amount of resources have failed to make the case within a reasonable period of time." *Kelley*, 140 F.3d at 605 (internal quotation marks and citation omitted). The Government therefore does not have to show that it has exhausted every conceivable option before a wiretap may be approved. *Id.*

The Government applied to tap the cell phones of Torres, Sanchez, and Vela, which it asserted were being used to contact numerous "interceptees." The Government supported its application with a 106-page affidavit of FBI

Special Agent Katherine Gutierrez, who attested that Torres, Vela, and Sanchez were engaged in narcotics activity.

Agent Gutierrez stated in the affidavit that several investigative techniques had been attempted yet failed, while other techniques appeared unlikely to achieve the investigation's goals and were too dangerous to employ. A very brief summary of the affidavit includes that Gutierrez noted that the FBI analyzed pen register and air time activity on Torres's phone, which showed that Torres was in contact with other known TS members and associates, but Agent Gutierrez could not access the substance of the conversations. Although the FBI had secured the cooperation of confidential informants, the informants did not know all of the accomplices with whom the interceptees associated, were unaware of all of the codes that conspiracy members used to identify one another, and did not know many telephone numbers used by the participants. There was no guarantee that the confidential informants referenced in the affidavit would continue to cooperate. Physical surveillance and trash searches of the targeted individuals were also of limited value because of the remoteness of Uvalde and Hondo and their small populations—anyone from out-of-town was readily identifiable by the targeted individuals. Nor was the use of undercover agents adequate. Due to the secretive nature of the TS, it was dangerous for an undercover officer to attempt to infiltrate the upper echelons of the organization. The danger was compounded because Sherriff's Deputy Cuellar had been leaking pending law enforcement operations to Vela.

This court has affirmed wiretap orders under similar circumstances involving investigations into large criminal conspiracies. *United States v. Krout*, 66 F.3d 1420, 1425 (5th Cir. 1995) (upholding a wiretap order based on affiant's statement that undercover agents could not infiltrate the conspiracy); *Webster*, 734 F.2d at 1054–55 (upholding a wiretap order based on affiant's

statement that physical surveillance had not disclosed the target's drug source, continued surveillance carried a risk of detection, and infiltration was risky and dangerous). Torres ignores Agent Gutierrez's assertions that the new TS leaders—including himself—were more violent than the previous leaders, that informants did not know all of Torres's accomplices, and that air time and pen register activity did not provide the substance of communications. Agent Gutierrez's affidavit therefore clearly satisfies the necessity requirement. *See Krout*, 66 F.3d at 1425; *Webster*, 734 F.2d at 1055.

### B. *Franks* Hearing

Torres argues that the district court erred when it denied his request for a *Franks* hearing. Torres suggests that Agent Gutierrez's misrepresented the need for electronic surveillance because electronic surveillance was actually only possible for 16 hours out of the day. Torres asserts that this "critical fact" was omitted from her affidavit.

Because Torres failed to put the district court on notice of his assertion that Gutierrez omitted critical information about the availability of real time information, this court reviews for plain error. *United States v. Bullock*, 71 F.3d 171, 179 (5th Cir. 1995).

Under *Franks*, a defendant is entitled to a hearing if he demonstrates that a "false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S. Ct. 2674, 2676 (1978). "There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Id.* at 171, 2684. An omission may amount to improper government conduct only if the omission is material and the defendant shows that the affiant excluded material

11

information "with the intent to mislead the magistrate." *United States v. Tomblin*, 46 F.3d 1369, 1377 (5th Cir. 1995).

The information in Agent Gutierrez's affidavit supported a probable cause finding that Torres used his cell phone to advance the distribution of narcotics and to effectuate murder on behalf of the TS. *See United States v. Froman*, 355 F.3d 882, 889 (5th Cir. 2004). Gutierrez's failure to state that 24-hour surveillance was authorized but could only operate 16 hours a day because of the need for translation assistance is a small detail of the Government's operation, not a material omission in the affidavit, and does not evince an intent to mislead. *See Tomblin*, 46 F.3d at 1377. The district court properly denied the *Franks* hearing.

## CONCLUSION

For the foregoing reasons, we find no reversible error of fact or law. The convictions and sentences of appellants are **AFFIRMED**.