RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0175p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 18-6118

REYNALDO PINEDA-DUARTE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 5:17-cr-00105-1—Joseph M. Hood, District Judge.

Decided and Filed: July 31, 2019

Before: MOORE, COOK, and READLER, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Cathryn R. Armistead, ARMISTEAD LAW GROUP, PLLC, Nashville, Tennessee, for Appellant. Charles P. Wisdom, Jr., Lauren Tanner Bradley, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

_____

## OPINION

_____

CHAD A. READLER, Circuit Judge. Suppose an individual approached by a police officer for a suspected drug offense swings a shovel at the officer—but misses. Has the individual "used violence," thereby triggering the sentencing enhancement in U.S.S.G. § 2D1.1(b)(2) of the Federal Sentencing Guidelines?

While the district court did apply the § 2D1.1(b)(2) enhancement, the court did not expressly find that the defendant "used violence." Rather, given the somewhat unique nature of the conduct at issue—swinging a shovel but missing the intended target—the district court characterized the defendant as either having threatened to use violence, or, alternatively, having attempted to use violence. But neither characterization fits the Guideline provision. Section 2D1.1(b)(2) applies where a defendant (1) "used violence," (2) "made a credible threat to use violence," or (3) "directed the use of violence." The conduct here plainly is not directing the use of violence. And the conduct was more than a threat—the defendant did not threaten to swing a shovel, he in fact appears to have done so. The remaining clause of § 2D1.1(b)(2), by its terms, applies only where the defendant "used violence." It does not independently allow for an enhancement where an act is characterized only as an attempt to use violence.

Given the unusual facts of this case, the district court's characterization of the events at issue was understandable. Nonetheless, we **VACATE** the defendant's sentence and **REMAND** the case to the district court for resentencing after application of the correct legal standard regarding the use of violence.

## I. BACKGROUND

Reynaldo Pineda-Duarte is a citizen of Mexico. Previously, he had twice been detained and removed by federal officers, once in California, and once in Texas, for entering the United States without authorization. He returned again, this time making his way to Clark County, Kentucky, a small farming community not far from Lexington.

One Clark County farm in particular had captured the attention of the Kentucky State Police. The farm was suspected of containing over 2,000 marijuana plants, and the State Police accordingly had the area under surveillance. In the course of servicing equipment used to monitor the area, the officers saw Pineda cultivating what appeared to be marijuana plants. The officers headed in Pineda's direction, strategically surrounded him, announced their presence, and ordered Pineda to "get on the ground." But Pineda did not get on the ground, nor did he surrender. Instead, he apparently swung a shovel he was holding. He then dropped the shovel and attempted to flee. After a struggle, the officers detained Pineda and took him into custody.

Pineda was charged with manufacturing more than 1,000 marijuana plants, in violation of 21 U.S.C. § 841(a)(1).  He was also charged with reentering the United States after having been deported, in violation of 8 U.S.C. § 1326(a).  Pursuant to an agreement with the government, Pineda pleaded guilty to the manufacturing charge in exchange for having his illegal reentry charge dismissed.

The probation office prepared a pre-sentence report.  In the PSR, the probation office recommended that Pineda receive a two-step offense-level enhancement pursuant to § 2D1.1(b)(2) of the Sentencing Guidelines.  That provision requires that a sentence be enhanced where a "defendant used violence, made a credible threat to use violence, or directed the use of violence" in conjunction with a drug offense.  U.S.S.G. § 2D1.1(b)(2).  The probation office concluded that Pineda's swinging a shovel at an officer was a "use[ of] violence, [. . .] a credible threat to use violence, or direct[ing] the use of violence," thereby triggering the enhancement.

Pineda disagreed with the probation office's conclusion that his conduct triggered § 2D1.1(b)(2).  The parties took up that disagreement at Pineda's subsequent sentencing hearing.  There, the parties discussed the police report, which detailed Pineda's conduct, and argued whether the enhancement was applicable.  Defense counsel acknowledged that Pineda had a shovel, that he was approached by officers, that the shovel moved in some respect towards an officer, and that Pineda then "almost immediately" dropped the shovel and ran.  *See* Sentencing Transcript at 2–6, *United States v. Pineda-Duarte*, No. 5:17-cr-00105 (E.D. Ky. 2018), *appeal docketed*, No. 18-6118 (6th Cir. Oct. 16, 2018) (defense counsel acknowledging that Pineda either "swung the shovel" or "turned and swung the shovel as extension of his being.").

Defense counsel framed Pineda's movement of the shovel as a reflexive action rather than an attempt to injure the officer—merely swinging a shovel rather than swinging a shovel at a police officer.  Pineda also disputed whether the conduct at issue constituted "violence," the touchstone in § 2D1.1(b)(2), because the shovel did not make contact with the officer, let alone injure him.  In response to a question from the district court, Pineda's counsel explained that had Pineda hit the officer with the shovel, Pineda "would be [in] a different position" as to sentencing.  But, counsel emphasized, Pineda did not hit the officer and, counsel accordingly characterized the conduct as non-violent.

At the close of argument, the district court posed and answered two questions.  One, did Pineda swing the shovel at an officer?  He did, said the court.  *See* Sentencing Transcript at 8, *United States v. Pineda-Duarte*, No. 5:17-cr-00105 (E.D. Ky. 2018), *appeal docketed*, No. 18-6118 (6th Cir. Oct. 16, 2018) ("[H]e did attempt to hit [the officer with the shovel]"); *see also id.* at 10 ("Had [Pineda] just dropped his shovel . . . , this would be a much different situation.  But unfortunately that's not what happened").  Two, did that conduct trigger the violence enhancement in § 2D1.1(b)(2)?  Yes it did, said the court.  Such conduct, the district court explained, "falls within the definition of . . . [§] 2D1.1(b)(2)" because swinging a shovel "qualifies as a threat or attempted use of violence."  *Id.* at 8.  The district court accordingly applied the two-level enhancement.  For the same reason, the district court rejected Pineda's argument that he qualified for the safety-valve sentence reduction set forth in § 5C1.2(a)(2).  That was so because the violence-enhancement provision and the safety-valve reduction are opposite sides of the same coin:  The reduction applies only where "the defendant *did not use violence* or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense."  § 5C1.2(a)(2) (emphasis added).

## II.  ANALYSIS

Guideline § 2D1.1(b)(2) instructs that a defendant's base offense level be enhanced by two levels where a defendant, in the course of committing a drug-related offense, engaged in one of three types of "violence":  Where he (1) "used violence," (2) "made a credible threat to use violence," or (3) "directed the use of violence."  As there is no allegation that Pineda "directed the use of violence," today's case turns on the first two categories of conduct.

We review de novo a district court's legal conclusions regarding Guidelines calculations, including whether to apply a sentencing enhancement.  *United States v. Taylor*, 648 F.3d 417, 431 (6th Cir. 2011).  With respect to "the findings of fact of the district court," we will accept those findings "unless they are clearly erroneous."  *United States v. Moon*, 513 F.3d 527, 539–40 (6th Cir. 2008) (internal citations omitted).

**A. Pineda Did Not Make A Credible Threat To Use Violence.**

Whether the "credible threat" clause of § 2D1.1(b)(2) applies here is relatively straightforward, and so we address it first. Through its use of the phrase "made a credible threat to use violence," the Sentencing Commission sought to enhance the sentence of one who, with the intent to injure another, credibly communicates that intent, without acting on it—for example, when one credibly threatens to hit someone with a shovel, but has not yet swung the shovel. Numerous circuit court decisions have interpreted this aspect of this Guideline provision, in each instance finding it applicable where the defendant credibly threatens a violent act, but where that act has not yet come to fruition. *See* Appendix.

No threat was made here. Indeed, there is no reading of the district court's factual findings that could lead us to conclude that Pineda vocalized or otherwise expressed his intent to injure the officer, but then did not act upon that intent. To the contrary, there is little dispute that Pineda acted in some manner, swinging the shovel either reflexively or with the intent to injure an officer. We can safely say, then, that Pineda's conduct does not constitute a threat to use violence.

**B. The "Used Violence" Clause In § 2D1.1(b)(2) Means To Exert Physical Force With The Intent To Injure Another Person.**

1. Whether Pineda "used violence" is a more difficult question. Had Pineda's decision to swing a shovel harmed the officer, Pineda seemingly would concede his actions were violent in nature. *See* Sentencing Transcript at 7, *United States v. Pineda-Duarte*, No. 5:17-cr-00105 (E.D. Ky. 2018), *appeal docketed*, No. 18-6118 (6th Cir. Oct. 16, 2018) (Pineda noting he "would be [in] a different position" had he injured the officer); *see also, e.g.*, *United States v. Fernandez*, 636 F. App'x 71, 74 (2d Cir. 2016) (defendant used violence as term is used in § 2D1.1(b)(2) when he shot a person); *United States v. Walker*, 578 F. App'x 812, 820 (11th Cir. 2014) (holding the same for a defendant who punched his co-conspirator). But what about a swing and miss? The government says the act still constitutes the use of violence. Pineda says his conduct was at most an *attempted* use of violence, but not violence itself.

Traditional canons of statutory construction guide our interpretation of the Guidelines. *See United States v. Babcock,* 753 F.3d 587, 591 (6th Cir. 2014) (citing *United States v. Jackson,* 635 F.3d 205, 209 (6th Cir. 2011)).  "The language of the statute," or, as here, the Guideline provision at issue, "is the starting point for interpretation, and it should also be the ending point if the plain meaning of that language is clear."  *United States v. Henry*, 819 F.3d 856, 870 (6th Cir. 2016) (internal citations omitted).  In considering that plain language, we might ordinarily start by looking to the definition of "violence" assigned by the Sentencing Commission.  But the Commission chose not to include a definition of "violence" in § 2D1.1(b)(2).

Dictionaries can help fill this interpretive gap.  *See, e.g.*, *Johnson v. United States*, 559 U.S. 133, 138–39 (2010) (citing to Webster's New International Dictionary for a definition of the word "physical" and Black's Dictionary for a definition for the word "force").  As defined in contemporary dictionaries, "violence" means "[t]he use of physical force, [usually] accompanied by fury, vehemence, or outrage; [especially] physical force unlawfully exercised with the intent to harm," *violence*, BLACK'S LAW DICTIONARY (10th ed. 2014), or "the use of physical force so as to injure, abuse, damage, or destroy," *violence*, MERRIAM-WEBSTER ONLINE, https://www.merriam-webster.com/dictionary/violence (last visited June 24, 2019).

Case law ordinarily might help fill the gap as well.  But although the enhancement for "us[ing] violence" was added to § 2D1.1 eight years ago, in 2011, neither party has cited to a subsequent judicial interpretation of that aspect of the Guideline section.  *Compare* U.S. Sentencing Guidelines Manual, § 2D1.1 (2011), *with* U.S.  Sentencing Guidelines Manual, § 2D1.1 (2010).

While the precedential backdrop is not robust, the definition of "violence" does not seem to be in dispute.  As used in § 2D1.1(b)(2), "violence" encompasses acts where one uses physical force with the intent to injure, regardless whether an injury actually occurs.  *See violence*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("physical force unlawfully exercised with the intent to harm").  That interpretation is consistent with the plain meaning of "violence" as reflected in dictionaries of contemporary vintage.  It is likewise consistent with the common-sense understanding that the word "violent" typically describes an act and the accompanying intent, not the result.

Defining "violence" in this manner also leads to a consistent reading of the entire Guideline provision. In interpreting a Guideline term, we are informed by the company that term keeps in the Guideline section. *See, e.g.*, *James v. United States*, 550 U.S. 192, 222 (2007) ("which of various possible meanings a word should be given must be determined in a manner that makes it 'fit' with the words with which it is closely associated."). Reading "violence" to include intentional acts of force designed to cause harm, regardless whether they in fact cause harm, makes the term fit with its accompanying language. We know the phrase "made a credible threat to use violence" in § 2D1.1(b)(2) applies when a defendant credibly communicates the intent to injure a person but has not yet acted upon that intent—for example, when one credibly threatens to hit someone with a shovel but has not yet swung that shovel. And we know the companion phrase "used violence" applies when a defendant formed the intent to injure a person and did injure that person—for example, when one hits another with a shovel. It would be unusual to nonetheless hold that one who forms the intent to injure a person with a shovel and then exerts physical force to act upon that intent has not similarly engaged in violence simply because the shovel misses the mark.

On this point, we find support in *United States v. Sikes*, 705 F. App'x 257, 258 (5th Cir. 2017). There, the Fifth Circuit affirmed a sentencing enhancement under § 2D1.1(b)(2) where the defendant, feuding with a co-conspirator over a drug crime, shot at (but missed) the co-conspirator. While the court seemingly was not faced with any dispute over the shooter's intent, application of the enhancement there, where the act at issue did not cause harm, is consistent with our reasoning here.

Pineda has not much to say in response. Primarily, he asks us to turn away from the actual words of this Guideline provision. For instance, he emphasizes the common law, suggesting that Pineda's conduct would not constitute violence under the common law understanding of the terms "assault" or "battery," which he says ordinarily require actual harm. But the Commission chose the term "violence," not "assault" or "battery," and we give that choice meaning.

2. The district court at times described Pineda's conduct as an "attempt" to use violence. That characterization, while understandable, raises both legal and factual questions, given the

Guideline provision at issue. Simply put, while a "swing and a miss" could constitute the use of violence under § 2D1.1(b)(2), we do not know whether the district court meant to say that Pineda's conduct, both in law and fact, was violent, or something short of it.

First the law. As already explained, force and intent to injure are the quintessential elements of violence. Could a failed attempt to harm ever satisfy that definition? Yes and no. Start with the intent to injure aspect of violence. Where one acts forcefully with intent to harm, but the attempt to harm fails, that act would likely be deemed violent. But now think about the force aspect of a violent act. Where one attempts to act forcefully, but fails to engage in a forceful act, the act is likely not violent. Take, for example, a defendant who reaches for a shovel with the intent to swing it in a forceful manner, but is stopped by officers before he could take possession of the shovel. That scenario raises substantial doubt whether the defendant exerted the necessary physical force to have engaged in violence. A failed attempt to create the opportunity to cause injury, in other words, is distinct from a completed act that attempts (but fails) to cause injury. The former would likely not satisfy the definition of violence, the latter likely would.

To be sure, as Pineda notes, the Sentencing Commission omitted the phrase "attempted violence" from § 2D1.1(b)(2). That omission, he suggests, must mean that only acts that in fact cause harm can be deemed violent. We do not think the Sentencing Commission, by relying solely on the phrase "used violence," in § 2D1.1(b)(2), meant to exclude from that phrase acts that did not cause harm. Had the Sentencing Commission used the phrase "caused injury," one could fairly argue that omitting the phrase "attempted to cause injury" was meaningful. But the Commission chose a different phrase—"used violence"—one that encompasses an exertion of physical force with the intent to injure another, even if the exertion of force does not successfully cause an injury. In that sense, adding the phrase "attempted violence" would do little more than tempt tautology.

And now the facts. Pineda, the district court observed, "attempted" to use violence. Did the district court mean to say that Pineda's act was an attempted one because the shovel did not hit anyone, but that the conduct was nonetheless violent, triggering the enhancement? Or did the district court mean that violence was lacking, differentiating between true violence on the one

hand and acts that lack force or intent on the other? We do not ask a district court to "recite any 'magic words'" when passing a sentence. *See United States v. McClellan*, 164 F.3d 308, 310 (6th Cir. 1999); s*ee also United States v. Tye*, 47 F. App'x 290, 292 (6th Cir. 2002). But the court must "articulate at least enough of its reasoning to permit an informed appellate review." *McClellan*, 164 F.3d at 310. As explained next, we would benefit from additional consideration by the district court before passing judgment on Pineda's sentence.

### C. The District Court Must Make A Finding Regarding Pineda's Intent Before Applying The Enhancement in § 2D1.1(b)(2).

In part due to the parties' somewhat abbreviated presentations below, the district court did not make a finding regarding whether Pineda formed the requisite intent to deem him as having "used violence." § 2D1.1(b)(2). Accordingly, we think the best course is to remand the case for the district court to resolve that issue with the benefit of briefing, presentation of evidence, and argument based upon the standards articulated here. *See United States v. Oliver*, 919 F.3d 393, 405 (6th Cir. 2019) (after clarifying the legal standard, remanding for resentencing to permit each party "to submit and identify additional evidence to assist the district court in determining whether § 2G2.2(b)(3)(B) applies to [defendant's] conduct.").

In many respects, as Pineda's counsel acknowledged below, the underlying facts are largely undisputed. All agree that Pineda moved the shovel he was holding toward an officer when police announced their presence. Pineda, however, says he moved the shovel without purpose, as opposed to swinging it with intent to injure an officer. He asserted that he was "startled and confused" and "simply reacted in a surprised manner" when he first encountered the officers. And, Pineda notes, he speaks Spanish, not English, which, although the point was not developed in the record, may have contributed to his confusion. The police report, however, indicated that Pineda swung the shovel "at" the officer.

This dispute goes to the crucial determination of Pineda's intent. And how that question is resolved, in turn, is crucial to determining whether Pineda "used violence." A person could, for example, swing a shovel reflexively in the direction of another with no intent to cause any injury. But one could just as easily swing that shovel with the intent to harm. To be sure, intent

may be inferred from conduct.  *See United States v. Powell*, 847 F.3d 760, 780 (6th Cir. 2017). But determining intent is a task better suited for the district court.

On remand, the district court may (or may not) change its bottom-line.  Either way, we are confident the district court, after measuring the facts against the legal backdrop articulated above, will fairly articulate whether the sentencing enhancement in § 2D1.1(b)(2) applies here.

### III.  CONCLUSION

For these reasons, we **VACATE** the defendant's sentence and **REMAND** to the district court for further proceedings consistent with this opinion.

**APPENDIX**

Circuit court cases addressing when a defendant has made a credible threat to use violence under § 2D1.1(b)(2) include *United States v. Kirk Tang Yuk*, 885 F.3d 57, 82–83 (2d Cir. 2018) (credible threat of violence when defendant intimidated witness through third person, referenced driving car over witness, predicted impending death of two witnesses); *United States v. Lewis-Zubkin*, 903 F.3d 1103, 1104 (8th Cir. 2018) (credible threat of violence when defendant stated two people should be assaulted, paid co-conspirator to carry out assaults); *United States v. Cantu*, 765 F. App'x 111, 111 (5th Cir. 2019) (credible threat of violence when defendant told arresting officer Texas Mexikan Mafia knew personal information, officer should cover his face when executing warrants, asked why officer was still in law enforcement when TMM knew him); *United States v. Overstreet*, 693 F. App'x 374, 375 (5th Cir. 2017) (credible threat of violence when defendant brandished a gun during drug transaction, accused person of attempting to rob him); *United States v. Torres*, 694 F. App'x 937, 942 (5th Cir. 2017) (credible threat of violence when defendant threatened drug debtor, held him at gunpoint); *United States v. Barrera*, 697 F. App'x 373, 374 (5th Cir. 2017) (credible threat of violence when defendant made death threat to informant); *United States v. Sykes*, 854 F.3d 457, 460–61 (8th Cir. 2017) (credible threat of violence when defendant, while in possession of a gun, stated he would find and shoot person who stole cocaine base from customer); *United States v. Bonilla*, 670 F. App'x 875, 876 (5th Cir. 2016) (credible threat of violence when defendant pointed gun at customer, threatened to harm her if she did not pay drug debt); *United States v. Medrano-Rodriguez*, 606 F. App'x 759, 762 (5th Cir. 2015) (credible threat of violence when defendant threatened fellow immigration detainee); *United States v. White*, 621 F. App'x 889, 893 (9th Cir. 2015) (credible threat of violence when defendant urged gang members to use violence).